**CARELLA BYRNE CECCHI**
  **BRODY & AGNELLO, P.C.**
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: decklund@carellabyrne.com
kcooper@carellabyrne.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN FELDMAN, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SCYNEXIS, INC, DAVID ANGULO, AND IVOR MACLEOD, | **<u>JURY TRIAL DEMANDED</u>** |
| Defendants. | |

Plaintiff Brian Feldman ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SCYNEXIS, Inc. ("Scynexis" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Scynexis; and (c) review of other publicly available information concerning Scynexis.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Scynexis securities between March 31, 2023 and September 22, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Scynexis is a biotechnology company which is primarily engaged in the development of ibrexafungerp, a broad-spectrum, intravenous (IV)/oral agent for fungal indications. The Company has received approval from the United States Food and Drug Administration ("FDA") for the use of ibrexafungerp tablets, distributed under the brand name BREXAFEMME® for the treatment of vulvovaginal

1

candidiasis and the reduction in the incidence of recurrent vulvovaginal candidiasis. The Company is also engaged in clinical investigation of ibrexafungerp for the treatment of invasive fungal infections in hospitalized patients and additional pre-clinical and discovery phase investigations.

3.     On Monday September 25, 2023, before the market opened, the Company submitted to the SEC a Form 8-K which reported that, following a recent review by GSK plc ("GSK") of the manufacturing process and equipment at the vendor that manufactures the ibrexafungerp drug substance, the Company became aware of potential cross contamination of ibrexafungerp with a non-antibacterial beta-lactam drug substance. As the Company explained, "[c]urrent FDA guidance recommends segregating the manufacture of beta-lactam compounds from other compounds since beta-lactam compounds have the potential to act as sensitizing agents that may trigger hypersensitivity or an allergic reaction in some people."  The Company therefore declared it would conduct a recall of BREXAFEMME from the market and place a temporary hold on clinical studies of ibrexafungerp, including a Phase 3 clinical study, until a mitigation strategy and a resupply plan are determined.

4.     On this news, the Company's shares fell $1.13, or 34.14%, to close at $2.18 per share on September 25, 2023, on unusually heavy trading volume. The stock price continued to decline the next trading day by 11.47% to close at $1.93 per share on September 26, 2023, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the equipment used to manufacture ibrexafungerp was also used to manufacture a non-antibacterial beta-lactam drug substance, presenting a risk of cross-contamination; (2) that the Company did not have effective internal controls and procedures, as well as adequate internal oversight policies to ensure that its vendor complied with current Good Manufacturing Practices (cGMP); (3) that, due to the substantial risk of cross-contamination, Scynexis was reasonably likely to recall its ibrexafungerp tablets and halt its clinical studies; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff Brian Feldman, as set forth in the accompanying certification, incorporated by reference herein, purchased Scynexis securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Scynexis is incorporated under the laws of the Delaware with its principal executive offices located in Jersey City, New Jersey. Scynexis trades on the NASDAQ exchange under the symbol "SCYX."

13.     Defendant David Angulo ("Angulo") was the President and Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Ivor Macleod ("Macleod") was the Chief Financial Officer was the ("CFO") at all relevant times.

15.     Defendants Angulo and Macleod (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Scynexis is a biotechnology company originally founded in 1999. Currently, the company is primarily engaged in the development of ibrexafungerp, a broad-spectrum, intravenous (IV)/oral agent for multiple fungal indications in both the community and hospital settings. In June 2021 the Company received approval from the FDA for the New Drug Application ("NDA") for indicating BREXAFEMME for the treatment of vulvovaginal candidiasis (also known as vaginal yeast infection). In October of 2022, the Company announced it was pursuing a U.S. commercialization partner to out-license BREXAFEMME. In December of 2022, the Company received FDA approval for an additional indication of recurrent vulvovaginal candidiasis.

17.     On March 30, 2023, the Company entered into a license agreement with GSK for an exclusive, royalty-bearing, sublicensable license for the development, manufacture, and commercialization of ibrexafungerp, including the approved product BREXAFEMME, for all indications, in all countries other than Greater China and certain other countries.

**Materially False and Misleading**
**Statements Issued During the Class Period**

18.     The Class Period begins on March 31, 2023. On that day, Scynexis filed

a Form 10-K for the period ended December 31, 2022 (the "2022 10-K"), which

contained the following statements:

Manufacturing and Supply of Ibrexafungerp

We have agreements with external vendors that are ***capable of
supplying drug substance and of producing drug product to support
ongoing and planned clinical trials, as well as for commercial
product.*** However, we do not own or operate and do not intend to own
or operate facilities for manufacturing, storage and distribution, or
testing of drug substance or drug product. We have relied on third-party
contract manufacturers for synthesis of our clinical compounds and
manufacture of drug product. We expect to continue to rely on either
existing   or   alternative   third-party   manufacturers   to   supply
ibrexafungerp for our performance of clinical trials and for supplying
GSK needs for clinical and commercial product until it obtains its own
source of supply.

\*       \*       \*

***A drug manufacturing program subject to extensive governmental
regulations   requires   robust   quality   assurance   systems   and
experienced personnel with the relevant technical and regulatory
expertise as well as strong project management skills. We believe we
have a team that is capable of managing these activities until GSK
assumes responsibility for them pursuant to the License Agreement.***

***The primary third-party vendors with which we have agreements in
place to support manufacturing and supply both for clinical
development and commercial needs have the required capabilities
with respect to facilities, equipment and technical expertise, quality
systems that meet global regulatory and compliance requirements,
satisfactory regulatory inspection history from relevant health
authorities and proven track records in supplying drug substance and
drug product for late-stage clinical and commercial use.***

19.     The 2022 10-K further stated that Scynexis oversees its contract manufacturers to ensure compliance with current good manufacturing practices ("cGMP"):

> …approved products, manufacturers and manufacturers' facilities are required to comply with extensive FDA requirements, including ensuring that quality control and manufacturing procedures conform to current Good Manufacturing Practices (cGMP). ***As such, we and our contract manufacturers, which we will be responsible for overseeing and monitoring for compliance, are subject to continual review and periodic inspections to assess compliance with cGMP. Accordingly, we and others with whom we work must continue to expend time, money and effort in all areas of regulatory compliance, including manufacturing, production and quality control.*** The FDA may hold us responsible for any deficiencies or noncompliance of our contract manufacturers in relation to ibrexafungerp and any other future product candidates we may seek to develop. Failure to follow cGMP can result in products being deemed adulterated, which carries significant legal implications.

20.     The 2022 10-K attested to the effectiveness of the Company's controls and procedures. Specifically, it stated: "as of December 31, 2022, our disclosure controls and procedures were effective at the reasonable assurance level."

21.     On May 10, 2023, Scynexis filed a Form 10-Q with the SEC for the period ended March 31, 2023 (the "1Q23 10-Q"), which stated that the Company was responsible for the costs of manufacturing and clinical studies for ibrexafungerp. Specifically, the 1Q23 10-Q stated:

- "***The Company will be responsible for the execution and costs of the ongoing clinical studies of ibrexafungerp***.";

- "Cost of product revenue consists primarily of distribution, freight expenses, royalties due to Merck, and **other manufacturing costs associated with BREXAFEMME.**"

- "Research and development expense consists of expenses incurred while performing research and development activities to discover, develop, or improve potential product candidates we seek to develop. This includes conducting preclinical studies and clinical trials, **manufacturing and other development efforts, and activities related to regulatory filings for product candidates**. We recognize research and development expenses as they are incurred. Our research and development expense primarily consists of … **costs related to executing preclinical and clinical trials, including** development milestones, drug formulation, **manufacturing and other development.**"

22.   The 1Q23 10-Q further stated that "as of March 31, 2023, [the Company's] disclosure controls and procedures were effective at the reasonable assurance level.

23.   On August 14, 2023, Scynexis filed a Form 10-Q with the SEC for the period ended June 30, 2023 (the "2Q23 10-Q"), stating that the Company was responsible for the costs of manufacturing and clinical studies for ibrexafungerp. Among other things, this filing stated that "the Company's product revenue, net

comprised of sales of BREXAFEMME that the Company sold as principal given *it maintains control of BREXAFEMME product until delivery to its wholesalers at which point control is transferred*." and "the Company continues to sell BREXAFEMME in the GSK Territory. The Company is the principal for these transactions under ASC 606 as *the Company maintains control of the BREXAFEMME inventory that is then sells to its customers*."

24.     The 2Q23 10-Q further stated that, "as of June 30, 2023, [the Company's] disclosure controls and procedures were effective at the reasonable assurance level."

25.     The above statements identified in ¶¶ 18-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the equipment used to manufacture ibrexafungerp was also used to manufacture a non-antibacterial beta-lactam drug substance, presenting a risk of cross-contamination; (2) that the Company did not have effective internal controls and procedures, as well as adequate internal oversight policies to ensure that its vendor complied with current Good Manufacturing Practices (cGMP); (3) that, due to the substantial risk of cross-contamination, Scynexis was reasonably likely to recall its ibrexafungerp tablets and halt its clinical studies; and (4) as a result of the foregoing, Defendants' positive statements about the Company's business,

operations, and prospects were materially misleading and/or lacked a reasonable basis.

## **Disclosures at the End of the Class Period**

26.   On September 25, 2023, before the market opened, Scynexis announced it would voluntarily recall of BREXAFEMME, tablets, due to risk of cross contamination. On that date, the Company filed a Form 8-K report, stating:

> Following a recent review by GSK of the manufacturing process and equipment at the vendor that manufactures the ibrexafungerp drug substance, ***SCYNEXIS became aware that a non-antibacterial beta-lactam drug substance is manufactured using equipment common to the manufacturing process for ibrexafungerp.*** Current FDA guidance recommends segregating the manufacture of beta-lactam compounds from other compounds since beta-lactam compounds have the potential to act as sensitizing agents that may trigger hypersensitivity or an allergic reaction in some people. In the absence of the recommended segregation, there is a risk of cross contamination. It is not known whether any ibrexafungerp has been contaminated with a beta-lactam compound and SCYNEXIS has not received reports of adverse events established to be due to the possible beta-lactam cross contamination. Nonetheless, in light of this risk and out of an abundance of caution (and aligned with GSK's recommendation), ***SCYNEXIS is recalling BREXAFEMME® (ibrexafungerp tablets) from the market and placing a temporary hold on clinical studies of ibrexafungerp, including the Phase 3 MARIO study, until a mitigation strategy and a resupply plan are determined.***

27.   On this news, the Company's shares fell $1.13, or 34.14%, to close at $2.18 per share on September 25, 2023, on unusually heavy trading volume. The stock price continued to fall the next trading session by 11.47% to close at $1.93 per share on September 26, 2023, also on unusually heavy trading volume.

11

28.     On September 27, 2023, Scynexis issued a press release announcing the voluntary nationwide recall of 2 lots of BREXAFEMME.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Scynexis securities between March 31, 2023 and September 22, 2023, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Scynexis's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Scynexis shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Scynexis or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Scynexis; and

    (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

35.     The market for Scynexis's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Scynexis's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Scynexis's securities relying upon the integrity of the market price of the Company's securities and market information relating to Scynexis, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Scynexis's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Scynexis's business, operations, and prospects as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Scynexis's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.     During the Class Period, Plaintiff and the Class purchased Scynexis's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to

the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Scynexis, their control over, and/or receipt and/or modification of Scynexis's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Scynexis, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.    The market for Scynexis's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Scynexis's securities traded at artificially inflated prices during the Class Period.  On April 3, 2023, the Company's share price

closed at a Class Period high of $3.67 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Scynexis's securities and market information relating to Scynexis, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Scynexis's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Scynexis's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Scynexis and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Scynexis's securities was an efficient market for the following reasons, among others:

(a)     Scynexis shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Scynexis filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Scynexis regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Scynexis was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

44.    As a result of the foregoing, the market for Scynexis's securities promptly digested current information regarding Scynexis from all publicly available sources and reflected such information in Scynexis's share price. Under these circumstances, all purchasers of Scynexis's securities during the Class Period suffered similar injury through their purchase of Scynexis's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.   All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking

statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Scynexis who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Scynexis's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Scynexis's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Scynexis's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Scynexis's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Scynexis and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth

21

more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts

were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Scynexis's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Scynexis's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members

of the Class acquired Scynexis's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Scynexis was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Scynexis securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     Individual Defendants acted as controlling persons of Scynexis within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Scynexis and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants

are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 7, 2023          By:  */s/ Kevin G. Cooper*
                                 **CARELLA BYRNE CECCHI**
                                 **BRODY & AGNELLO, P.C.**
                                 Kevin G. Cooper
                                 Donald A. Ecklund
                                 5 Becker Farm Road

Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: decklund@carellabyrne.com
kcooper@carellabyrne.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Brian Feldman*