Caroline Pignatelli
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6679
Email: cpignatelli@cooley.com

Shannon M. Eagan (*Pro Hac Vice*)
Brett De Jarnette (*Pro Hac Vice*)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 849-7400
Email: seagan@cooley.com
Email: bdejarnette@cooley.com

*Attorneys for Defendants Scynexis, Inc.,*
*David Angulo, And Ivor Macleod*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIAN FELDMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SCYNEXIS, INC, DAVID ANGULO, and IVOR MACLEOD, <br><br> Defendants. | Case No. 2:23-CV-22082-BRM-CLW <br><br> <u>CLASS ACTION</u> <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** |

**TABLE OF CONTENTS**

                                                                                    **Page**

INTRODUCTION .................................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.      PLAINTIFF FAILS TO ADEQUATELY PLEAD FALSITY ........................................ 2

        A.    Plaintiff Alleges No Particularized Facts Showing That Scynexis Was
              Aware of Any Cross Contamination Risk When Any Challenged
              Statement Was Made ................................................................................ 2

        B.    Plaintiff Fails to Adequately Plead That Defendants Made False or
              Misleading Statements Despite Not Being Aware of Any Cross-
              Contamination Risk .................................................................................. 3

        C.    Scynexis Disclosed the Overarching Risk Plaintiff Claims It Concealed ............. 6

        D.    None of the Statements Triggered a Duty to Disclose That Manufacturing
              Equipment Was Used to Produce a Non-Antibacterial Beta Lactam ................... 7

        E.    The Challenged Statements Are Inactionable as a Matter of Law ....................... 8

II.     PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE
        TO A STRONG INFERENCE OF SCIENTER ................................................... 8

CONCLUSION ...................................................................................................... 12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Able Lab'ys Sec. Litig.*,
  2008 WL 1967509 (D.N.J. Mar. 24, 2008)............................................................................7

*In re Adolor Corp. Sec. Litig.*,
  616 F. Supp. 2d 551 (E.D. Pa. 2009) ...................................................................................10

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ...................................................................................................7

*Belmont v. MB Inv. Partners, Inc.*,
  2010 WL 2348703 (E.D. Pa. June 10, 2010), *aff'd*, 708 F.3d 470 (3d Cir.
  2013) .....................................................................................................................................11

*City of Warren Police & Fire Retirement System v. Prudential Financial, Inc.*,
  (citing 70 F.4th 668 (3d Cir. 2023).)......................................................................................5

*Connor v. Unisys Corp.*,
  2024 WL 387633 (E.D. Pa. Feb. 1, 2024) ..............................................................................5

*In re Discovery Lab'ys Sec. Litig.*,
  2006 WL 3227767 (E.D. Pa. Nov. 1, 2006) .......................................................................3, 6

*In re Elecs. for Imaging, Inc. Sec. Litig.*,
  2019 WL 397981, at *9 (D.N.J. Jan. 31, 2019) ...................................................................11

*George v. China Auto. Systems, Inc.*,
  2012 WL 3205062, at *13 (S.D.N.Y. Aug 8, 2012)..............................................................11

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004)...................................................................................................9

*In re Heartland Payment Sys., Inc. Sec. Litig.*,
  2009 WL 4798148 (D.N.J. Dec. 7, 2009)..............................................................................10

*Hoey v. Insmed Inc.*,
  2018 WL 902266 (D.N.J. Feb. 15, 2018) ...........................................................................3, 10

*Institutional Inv. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)..................................................................................................11

*Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*,
  919 F. Supp. 2d 321 (S.D.N.Y. 2013)...................................................................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kinch v. Caulfield*,
2024 WL 1653667 (D.N.J. Apr. 17, 2024) ...............................................................................10

*Lewakowski v. Aquestive Therapeutics, Inc.*,
2023 WL 2496504 (D.N.J. Mar. 14, 2023)...........................................................................9, 10

*Lord Abbett Affiliated Fund, Inc v. Navient Corp.*,
363 F. Supp. 3d 476 (D. Del. 2019)...........................................................................................8

*In re Majesco Securities Litigation*,
2006 WL 2846281, AT *8 (D.N.J. Sept. 29, 2006)....................................................................4

*Martin v. GNC Holdings, Inc.*,
757 F. App'x. 151 (3d Cir. 2018) ..............................................................................................9

*In re Mylan N.V. Sec. Litig.*,
2023 WL 3539371 (W.D. Pa. May 18, 2023).............................................................................8

*In re NutriSystem, Inc. Sec. Litig.*,
653 F. Supp. 2d 563 (E.D. Pa. 2009) .........................................................................................9

*In re Ocugen, Inc. Sec. Litig.*,
659 F. Supp. 3d 572 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar.
21, 2024) ............................................................................................................................3, 5, 7

*Paxton v. Provention Bio, Inc.*,
2022 WL 3098236 (D.N.J. Aug. 4, 2022) ..............................................................................3, 7

*In re PayPal Holdings Inc. Sec. Litig.*,
2025 WL 325603 (D.N.J. Jan. 29, 2025)....................................................................................4

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*,
311 F.3d 198 (3rd. Cir. 2002) ....................................................................................................5

*Roofer's Pension Fund v. Papa*,
2018 WL 3601229, at *21 (D.N.J. July 27, 2018)....................................................................10

*Sapir v. Averback*,
2016 WL 554581 (D.N.J. Feb. 10, 2016) ...................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..................................................................................................................11

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ......................................................................................................3

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Zucker v. Quasha*,
    891 F. Supp. 1010 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir. 1996) ..........................................5

**Statutes**

21 U.S.C. § 351(a)(2)(A) ...........................................................................................................8

**Other Authorities**

Rule 10b–5 ..................................................................................................................................2

**INTRODUCTION**

The Opposition confirms that the AC fails to plead a securities fraud claim under the PSLRA's heightened pleading standards. Plaintiff incorrectly claims that Scynexis misled investors by not disclosing a potential cross-contamination risk that prompted a voluntary recall of BREXAFEMME in September 2023. He fails to allege particularized facts showing that Scynexis knew of any risk at the time any challenged statement was made six months earlier. ***The Opposition does not claim otherwise***. This ends the inquiry and compels dismissal.

Nonetheless, Plaintiff wrongly suggests that he can survive dismissal even if Scynexis was unaware of a cross-contamination risk when the challenged statements were made. In doing so, he speculates that the risk existed years before the Class Period started and that Scynexis did nothing to oversee its vendor. This backup theory fails because Plaintiff pleads no ***contemporaneous*** facts showing that Scynexis did not monitor its vendor. Nor does he plead facts showing any cross-contamination risk existed prior to any challenged statement. Instead, Plaintiff works backwards from the September 2023 recall to assume that the cross-contamination risk existed at the start of the Class Period, ***six months earlier***. Such hindsight pleading is impermissible under the PSLRA, and Plaintiff fails to adequately plead falsity as a result.

Plaintiff also fails to plead a strong inference of scienter that is at least as compelling as opposing inferences. He does not dispute his failure to identify documents, conversations, confidential witnesses, reports, or statements to show what each Defendant knew and when. While Plaintiff complains that Defendants ask him to plead "evidence," his own cited cases show that courts routinely require at least some of these sources to meet the PSLRA's strict standards. Nor does Plaintiff dispute his failure to allege stock sales, resignations, bonus compensation, or secondary offerings—the absence of which strongly cut against any inference of scienter.

Holistically, the most compelling inference is that Scynexis acted swiftly and responsibly after learning of a potential safety risk, despite no confirmed cross-contamination. This is the opposite of fraud. The AC should be dismissed in its entirety with prejudice.

## ARGUMENT

I. **PLAINTIFF FAILS TO ADEQUATELY PLEAD FALSITY**

A. **Plaintiff Alleges No Particularized Facts Showing That Scynexis Was Aware of Any Cross Contamination Risk When Any Challenged Statement Was Made**

Plaintiff incorrectly claims that Scynexis misled investors by failing to disclose a "then-existing risk of cross-contamination resulting from Scynexis's failure to ensure cGMP compliance and separation of ibrexafungerp from non-antibacterial beta-lactam substances." (Opp. at 12.)[1] But the Opposition does not contend that Defendants knew about that alleged risk when the challenged statements were made. (*See* Opp. at 13.) "Because plaintiff[ has] ***not claimed that defendants were aware of the information*** they allegedly withheld regarding the [] statements, such statements cannot sustain plaintiff['s] Rule 10b–5 claims." *See In re Discovery Lab'ys Sec. Litig.*, 2006 WL 3227767, at *9 (E.D. Pa. Nov. 1, 2006).

In an effort to evade the PSLRA's pleading standards, the Opposition argues, ***without a single case in support***, that "knowledge of the undisclosed risk is [not] required to plead falsity."[2] (Opp. at 13.) This is not the law. Plaintiff fails to credibly distinguish *Discovery Lab'ys*, *Twitter*, *Paxton*, and *Hoey*, which dismissed securities fraud claims because the plaintiffs failed to

---

[1] All abbreviations are the same as those used in Defendants' Motion to Dismiss ("Mot.") (Dkt. 28-1) and Plaintiffs' Opposition ("Opp.") (Dkt. 29).

[2] Defendants do not "acknowledge" that "access to the undisclosed information suffices" to plead falsity. (*Contra* Opp. at 13.) As explained in Defendants' motion to dismiss, Plaintiff must plead that Defendants were aware of the purportedly omitted information when the challenged statements were made. (Mot. at 9–10.) While the existence of and access to such information are prerequisites, as a threshold matter, they are not sufficient in themselves to show awareness. (*Id.*)

2

sufficiently plead that defendants "learned," "knew," "were aware," or "were informed" of the purportedly omitted information when the challenged statements were made.[3] While Plaintiff claims the risks involved in those cases were not "discoverable at the time the statements were made" (Opp. at 14), none of those cases even addressed discoverability, much less ruled on that basis. Because Plaintiff has not adequately pled that any Defendant was aware of any cross-contamination risk when the challenged statements were made, he fails to plead falsity.

**B.      Plaintiff Fails to Adequately Plead That Defendants Made False or Misleading Statements Despite Not Being Aware of Any Cross-Contamination Risk**

Plaintiff is wrong that Defendants misled investors even if they were not aware of the purported cross-contamination risk. (Opp. at 14.) He argues that Defendants "had the ability to uncover it if the Company had actually monitored its manufacturing facility (as Defendants purported to do)." (*Id.*) But this backup theory relies on three unsupported inferential leaps: (1) that the cross-contamination risk existed before the Class Period started, (2) that Scynexis did nothing to monitor its vendor, and (3) had Scynexis adequately monitored its vendor, it would have discovered the cross-contamination risk. (*Id.*) None are sufficiently alleged.

First, Plaintiff pleads no ***particularized***, ***contemporaneous*** facts showing a cross-contamination risk existed at the time the challenged statements were made. *See In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 588–89 (E.D. Pa. 2023), *aff'd*, 2024 WL 1209513 (3d Cir. Mar. 21, 2024) (plaintiffs must "cite contemporaneous sources rather than rely on conjecture based on subsequent events"). Plaintiff concedes he has not alleged a single document, conversation, confidential witness, or report showing what information Scynexis allegedly possessed at the time

---

[3] (Mot. at 10–11 (citing *Discovery Lab'ys*, 2006 WL 3227767, at *12; *Paxton v. Provention Bio, Inc.*, 2022 WL 3098236, at *14 (D.N.J. Aug. 4, 2022); *Hoey v. Insmed Inc.*, 2018 WL 902266, at *17 (D.N.J. Feb. 15, 2018); *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022)).)

the alleged statements were made. (Opp. at 2.) He tries to excuse this pleading deficiency by citing a civil rights case, which is not subject to the PSLRA's heightened pleading standards, arguing that he need not produce "evidence" for allegations to be "well-pled." (*Id.* (citing *Phillips v. Cnty. of Allegheny* 515 F.3d 224, 234 (3d Cir. 2008)).) But he ignores that securities plaintiffs often cite such sources to meet the PSLRA's strict particularity requirements. In fact, his own cited case, *In re Majesco Securities Litigation*, only survived dismissal after the plaintiff relied on "confidential informants," "reports," and "weekly meetings"—contemporaneous sources that are not pled here. (Opp. at 2 (citing 2006 WL 2846281, at *8 (D.N.J. Sept. 29, 2006)).) Even when these sources are alleged, courts still dismiss complaints for failing to state a claim, highlighting the complete lack of particularity in Plaintiff's pleading here. *See In re PayPal Holdings Inc. Sec. Litig.*, 2025 WL 325603, at *17 (D.N.J. Jan. 29, 2025) (dismissing complaint that identified reports, meetings, and seven confidential witnesses, as lacking the requisite "specific details").

Instead of pleading contemporaneous facts, Plaintiff relies on hindsight based on Scynexis's September 2023 announcement that it recalled BREXEFFEME in an abundance of caution, GSK recommended that the Company do so, and the FDA concurred. (Opp. at 2.) He then works backwards from that disclosure, assuming the cross-contamination risk existed ***six months earlier*** in March 2023, when the first challenged statement was made. (*Id.*) But a "purported claim of securities fraud based merely on information that became apparent after the fact . . . is the exact type of fraud by hindsight argument that the Third Circuit has long rejected as improper." *PayPal*, 2025 WL 325603, at *15. That is all Plaintiff does in the AC, which is insufficient.

Lacking any well-pled facts, the Opposition invents allegations not set forth in the AC—that Scynexis recalled "all batches" of BREXEFEMME sold since it obtained approval in June 2021. (Opp. at 2, 13.) But this new hypothesis makes no sense given the FDA found Scynexis in

4

compliance with cGMP regulations when it approved the drug in 2021. (Mot. at 4 (citing ¶ 25).) The Opposition does not address this point. And nowhere does the AC say that Scynexis recalled "all batches," nor does it explain what that means. In fact, paragraph 43 of the AC claims that Scynexis recalled just "two lots," without providing specifics about what a "lot" means, when it was produced, or that a recall necessarily means that each lot had an issue. (¶ 43.)

Accordingly, all of Plaintiff's arguments stem from speculation about the September 2023 disclosure at the end of the Class Period, which is impermissible hindsight pleading. Plaintiff fails to address the Third Circuit's decisions in *Ocugen*, *Zucker*, and *In re Rockefeller*, which each affirmed dismissals and refused to impute information disclosed at the end of the class period to earlier periods of time.[4] Plaintiff instead cites **one** case, *City of Warren Police & Fire Retirement System v. Prudential Financial, Inc.*, for the proposition that "fraud by hindsight" pleading is permissible. (Opp. at 13 (citing 70 F.4th 668, 694–94 (3d Cir. 2023)).) But that case proves Defendants' point, as the plaintiff relied on former employee allegations—which are not present here—reflecting "internal discussions." (*Id*.) The Court should follow Third Circuit precedent and reject Plaintiff's textbook attempt to plead fraud by hindsight.

Second, even if Plaintiff adequately pled that the risk existed (he has not), he still fails to plead particularized facts showing that the mere existence of a risk means that Scynexis "fail[ed] to monitor" its vendor. (Opp. at 18.) He does not dispute his failure to allege how often Scynexis inspected facilities, what inspections entailed, or what other steps the Company took or did not take to oversee its vendor. *Connor v. Unisys Corp.*, 2024 WL 387633, at *7–8 (E.D. Pa. Feb. 1, 2024) (dismissing complaint where plaintiff failed to plead deficient controls because the

---

[4] (*See* Mot. at 11–12 (citing *Ocugen*, 659 F. Supp. 3d at 591; *Zucker v. Quasha*, 891 F. Supp. 1010, 1017 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir. 1996); *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 225 (3rd. Cir. 2002)).)

complaint "lack[ed] even basic information about how the [internal control] Framework works, or why its good faith application would have" resulted in financial reporting issues). Nor does Plaintiff distinguish *Discovery Lab'ys*, where the court refused to "infer from the fact that stability subsequently was identified as a problem that defendants had not performed adequate testing . . . this is the very essence of fraud by hindsight." 2006 WL 3227767, at *9.

Third, Plaintiff is wrong that "had Defendants inspected the facility, they would have uncovered the cross-contamination risk, as is clear from the fact that GSK was able to quickly uncover it." (Opp. 13–14.) Setting aside Plaintiff's failure to adequately allege that Scynexis did not inspect the facility, Plaintiff does not plead facts showing when GSK inspected, what it did, or how that inspection differed from the Company's process (if at all). Nor does Plaintiff address how GSK's discovery of issues in September 2023—*six months* after partnering with Scynexis—is a "quick" discovery. In fact, the analyst report Plaintiff relies on said it would expect GSK to inspect manufacturing facilities "*ahead* of GSK's March licensing agreement" (Opp. at 1), suggesting GSK inspected before licensing BREXEFEMME and found no issues at that time.

Plaintiff fails to plead a false or misleading statement under his backup theory of fraud.

### C.     Scynexis Disclosed the Overarching Risk Plaintiff Claims It Concealed

Plaintiff does not dispute that disclosure of a purportedly concealed risk precludes liability. (Opp. at 16.) Here, Plaintiff claims that Scynexis concealed "undisclosed material risks to the Company's business, including risks related to potential recalls and delays in clinical studies." (*See* ¶ 51.) Plaintiff ignores that Scynexis disclosed these precise risks to investors, including a potential recall and delays in clinical trials: "If a regulatory agency discovers previously unknown problems with a product, such as . . . *problems with the facility where the product is manufactured* . . . a regulatory agency may . . . *suspend any ongoing clinical trials* . . . or *require a product recall*." (Ex. 5 at 33.) Plaintiff argues that *Paxton* is distinguishable because the company "disclosed the

6

specific risk at issue." (Opp. at 17 (citing 2022 WL 3098236, at \*14).) But that is exactly what Scynexis did here. Indeed, the disclosure in *Paxton* conveys the same risk: "[w]e are completely dependent on third parties to manufacture our product . . . our commercialization . . . ***could be halted, delayed or made less profitable*** if those third parties fail . . . ." 2022 WL 3098236, at \*14.

Plaintiff next argues that Scynexis must have concealed a risk because the stock price later dropped. (Opp. at 16.) He misses the point. The disclosure that prompted the stock drop—a product recall—is different than the risk that a recall may occur in the future. Accordingly, a stock drop following a product recall has no bearing on whether the risk of a product recall occurring was adequately disclosed earlier. Plaintiff's cited cases compel no different conclusion, as the undisclosed information matched the alleged corrective disclosures. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) (disclosing "security vulnerabilities" existing when challenged statements made); *In re Able Lab'ys Sec. Litig.*, 2008 WL 1967509, at \*15 (D.N.J. Mar. 24, 2008) (disclosing "adverse" information that existed when challenged statements made).

**D.     None of the Statements Triggered a Duty to Disclose That Manufacturing Equipment Was Used to Produce a Non-Antibacterial Beta Lactam**

Plaintiff fails to plead that Scynexis's statements triggered a duty to disclose any cross-contamination risk, even assuming Defendants knew about it when they made the challenged statements. First, the non-binding, draft guidance that prompted the recall (Ex. 3), cannot form the basis of an actionable omission. *Ocugen*, 659 F. Supp. 3d at 591 (dismissing complaint where "the 'overarching omission' turn[ed] upon transforming the FDA's non-binding guidelines into strict requirements based only on hindsight").[5] Indeed, the June 2022 Draft Guidance says it is "***not for***

---

[5] Plaintiff improperly suggests that 21 U.S.C. § 351(a)(2)(A) turns the draft guidance into a binding statutory requirement. (*See* Opp. at 7–9.) But the statute says nothing about beta lactams. Plaintiff ignores the disclaimers that the draft guidance is "***not for implementation***," "should be viewed

*implementation*," meaning it cannot be used to determine regulatory compliance. (Ex. 3.)[6]

Second, Plaintiff's argument that "Defendants cherry-pick the false statements to claim that there is a 'mismatch' between their statements and the undisclosed risk of cross-contamination or non-compliance with cGMP" rings hollow. (Opp. at 19.) ***Defendants' motion directly quotes each statement challenged in the AC***. (*See* Mot. at 16 (citing ¶¶ 48, 50).) Regardless, Scynexis's belief in its manufacturing partner's "capabilities" and the "team['s]" ability to "meet global and regulatory compliance requirements" say nothing about what the manufacturer was actually doing. *See In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at *13 (W.D. Pa. May 18, 2023) (dismissing complaint because of mismatch between challenged statement and alleged omission).

### E.  The Challenged Statements Are Inactionable as a Matter of Law

Scynexis's confidence about its manufacturing partner's "capabilities" and belief in the "team['s]" ability to "meet global regulatory and compliance requirements" are inactionable optimism and opinion—not "direct and concrete assertions of fact." (Opp. at 10, 17); *see Lord Abbett Affiliated Fund, Inc v. Navient Corp.*, 363 F. Supp. 3d 476, 487 (D. Del. 2019) (statements that company had a "demonstrated compliance infrastructure" found inactionable).

### II.  PLAINTIFF FAILS TO PLEAD PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER

To survive dismissal, Plaintiff must plead particularized facts that Defendants made a

---

only as recommendations," and that "[t]he use of the word *should . . .* means that something is suggested or recommended, **but not required**." (*See* Ex. 3 at 4.)

[6] Plaintiff ignores the non-final nature of the draft guidance document that prompted the recall, arguing that the June 2022 Draft Guidance is merely "a later draft version" of the "finalized and published" 2013 Guidance. (Opp. at 9 n.4.) But the 2013 Guidance is focused on beta-lactam *antibiotics* (Ex. 1), not *non-antibacterial* beta-lactams (Ex. 3). Scynexis announced it was issuing a recall pursuant to June 2022 "draft guidance." (Ex. 8 at 4.) Regardless, Plaintiff fails to explain why either guidance matters given neither constituted regulatory requirements for implementation and the FDA found Scynexis in compliance when it approved the drug in June 2021. (¶ 3.)

highly unreasonable omission either intentionally or with deliberate recklessness, which constitutes "an extreme departure from the standards of ordinary care." *Martin v. GNC Holdings, Inc.*, 757 F. App'x. 151, 153–54 (3d Cir. 2018). Plaintiff fails to meet this strict standard.

First, Plaintiff pleads no particularized facts about what each Defendant knew and when. (Mot. at 9–10.) He simply assumes that "Defendants' failure to confirm or investigate whether the manufacturing equipment was not shared with beta-lactams was severely reckless." (Opp. at 21.) But Plaintiff fails to plead any contemporaneous facts showing that Defendants failed to "confirm or investigate" Scynexis's vendor, or what they did, knew, or believed with respect to monitoring the vendor. *Sapir v. Averback,* 2016 WL 554581, at *1 (D.N.J. Feb. 10, 2016) (no scienter where complaint "fails to cite a single document or witness that corroborates allegations of scienter").

Plaintiff misses the point when arguing he is not required to plead "confidential witness or other documentary evidence to demonstrate scienter." (Opp. at 23.) He does not plead facts from ***any source*** showing what each Defendant knew and when—documents and witnesses are just two examples of his pleading failure. Tellingly, he ignores *GSC Partners* and *In re Nutrisystem*, which dismissed complaints for failing to plead "what facts were known to Defendants" and "how or when this knowledge was obtained."[7] He also fails to address *Lewakowski v. Aquestive Therapeutics, Inc.*, 2023 WL 2496504, at *12 (D.N.J. Mar. 14, 2023). There, this District dismissed the complaint for failing to allege scienter because it was "devoid of any particularized facts—***no internal reports, memoranda, or communications***—suggesting Defendants were aware that . . . their public disclosures were false when made." *Id*. It also noted that the plaintiff did not "cite to any [] 'confidential witnesses' to support [his] claims—***a fundamental deficiency that further***

---

[7] *In re NutriSystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 578 (E.D. Pa. 2009); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).

***undermines any inference of scienter***." *Id.* As in *Lewakowski,* Plaintiff fails to plead specific facts showing what each Defendant knew and when. This is fatal.

Second, Plaintiff concedes that no Defendant profited from the alleged fraud.[8] (Opp. at 24.) While he claims that he does not need to plead motive and opportunity to allege scienter (*id.*), he ignores that the lack of stock sales cuts "against an inference of scienter,"[9] *Hoey*, 2018 WL 902266, at *21 (collecting cases). And while he argues that Defendants ***increased*** their holdings during the Class Period (*see* Opp. at 25) that fact actually "raises a compelling inference ***against*** scienter." *See In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 572–73 (E.D. Pa. 2009). This is especially so when they did not sell any newly acquired stock and lost value when the stock dropped.

Third, Plaintiff relies almost entirely on the "core business doctrine," which imputes facts about a company's core business to corporate officers. *In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL 4798148, at *7 (D.N.J. Dec. 7, 2009). He irrelevantly argues that "Scynexis executives were finely attuned to the details of the only manufacturer of its only drug." (Opp. at 22.) But the doctrine does not overcome the AC's failure to allege that anyone at Scynexis knew about a cross-contamination risk or believed the company was inadequately monitoring its vendor. Thus, no fraudulent mental state could be imputed to the individual Defendants. Plaintiff's cited cases are inapposite because they involved confidential witnesses and expressed "hesita[tion]"

---

[8] Plaintiff cites to *Roofer's Pension Fund v. Papa* for the proposition that he need not plead that Defendants had a motive and opportunity to commit fraud to allege scienter. 2018 WL 3601229, at *21 (D.N.J. July 27, 2018). But that case is inapposite because the plaintiff alleged stock sales, resignations, and former employee allegations—none of which are pled here. *Id.*

[9] Plaintiff seeks to improperly amend the AC through his Opposition by arguing that Defendants had motive to conceal a risk from GSK to protect royalty payments. (Opp. at 25); *Kinch v. Caulfield*, 2024 WL 1653667, at *4 (D.N.J. Apr. 17, 2024) (amendments through opposition are improper). But he pleads no facts suggesting Scynexis withheld information from GSK, nor does he explain how communications with GSK render public statements intentionally misleading.

10

about applying the doctrine. *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 268 (3d Cir. 2009) (scienter pled through witness statements); *see In re Elecs. for Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *9 (D.N.J. Jan. 31, 2019).[10]

Fourth, Plaintiff argues that "Defendants claim that the Court should not consider the fact that GSK was quickly able to uncover the issues by inspecting the facility." (Opp. at 23.) But again, Plaintiff fails to explain how GSK's discovery of the risk in September 2023 shows that Scynexis made statements with fraudulent intent **six months earlier** in March 2023. *See Iowa Pub. Employee's Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 334 (S.D.N.Y. 2013) (dismissing complaint where the "SEC may indeed have found the fraud easily discoverable . . . but this fact does not . . . reflect recklessness"); *Belmont v. MB Inv. Partners, Inc.*, 2010 WL 2348703, at *8 (E.D. Pa. June 10, 2010), *aff'd*, 708 F.3d 470 (3d Cir. 2013) (allegations fell short where plaintiffs "suggest[ed] that [defendant's] failure to conduct due diligence . . . was so egregious that had he done his homework, he easily would have discovered [the] fraud").[11]

Finally, Plaintiff fails to address the strong competing inference that Scynexis took precaution and upon learning about a potential risk, swiftly recalled the drug despite there being no reported safety issues. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Indeed, the most compelling inference is that GSK conducted extensive due diligence **before** deciding to partner with Scynexis in March 2023. After closely monitoring and inspecting the

---

[10] Plaintiff is also wrong that Defendants' familiarity with FDA regulations implies scienter. (Opp. at 21). His own cited case, *George v. China Auto. Systems, Inc.*, held that knowledge of an "unambiguous accounting rule, without more, do[es] not evidence recklessness." 2012 WL 3205062, at *13 (S.D.N.Y. Aug. 8, 2012).

[11] Plaintiff cites *China Auto.*, for the proposition that "quick discovery" of an issue supports scienter. 2012 WL 3205062, at *14. That case is inapposite, as it involved the correction of financial statements where the error existed when the statements were made. *Id*. In contrast, Plaintiff fails to plead any risk existed when the challenged statements were made. *Id*.

11

vendor, GSK discovered a potential issue *six months later* and Scynexis voluntarily decided to recall the drug based on *draft* and *non-binding* FDA guidance. This is not fraud.

Plaintiff fails to plead a strong inference of scienter, and his claims should be dismissed.

## CONCLUSION

For these reasons, the Court should dismiss the AC with prejudice.[12]

Dated: April 4, 2025

**COOLEY LLP**

By:  */s/ Caroline Pignatelli*
Caroline Pignatelli
(N.J. Attorney No. 026292007)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6679
Email: cpignatelli@cooley.com

*Counsel for Defendants Scynexis, Inc, David Angulo, and Ivor Macleod*

---

[12] Because Plaintiff fails to plead a primary Section 10(b) violation, his Section 20(a) necessarily fails. (*See* Mot. at 23.)

12

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed with the Clerk of the Court for the United States District Court, District of New Jersey, via the CM/ECF system, and will be served electronically on registered participants.

Dated: April 4, 2025

**COOLEY LLP**

By: */s/ Caroline Pignatelli*
Caroline Pignatelli
(N.J. Attorney No. 026292007)
55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6679
Email: cpignatelli@cooley.com

*Counsel for Defendants Scynexis, Inc., David Angulo, and Ivor Macleod*